First case this morning is case number 412-0124, Board of Education of Roxana v. Pollution Control Board, for the appellant Stuart Witt, for the applicant Richard Hussack, and Tom Wilson. Mr. Witt. May it please the court, counsel. My name is Stuart Witt, and I, together with the co-counsel, represent the Board of Education of Roxana Community Unit School District No. 2 in this matter. This case finds its origins in the $3.8 billion dollar core project constructed by the taxpayer, WRB Refining, at its refinery in Roxana, Illinois. As WRB was in the process of completing the core project, it filed, over a six-month period of time, 35 applications for pollution control certification for 35 separate projects, including petroleum refinery units and other equipment. The 28 projects that are the subjects of this appeal were built at an aggregate cost of $1,274,000,000. Five projects account for more than $1,000,000,000, or 79% of the total. They include the Tier 2 gasoline S-absorb project at a cost of $99,000,000. The ultra-low sulfur diesel hydrotreater at a cost of $200,000,000. The gasoline hydrotreater project at a cost of $32,000,000. The ultra-low sulfur diesel expansion project built at a cost of $407,000,000. A lot of money involved, counsel. A lot of money. Where are we going from that? The significant thing is that each of these units is integral to the production of gasoline and diesel fuel for use in today's automobiles. And that's why the school district petitioned to intervene before the Pollution Control Board, challenging the certifications. So what happened? In October of 2010, WRB filed its applications. Beginning on August 25th, the agency began forwarding its recommendations to the Pollution Control Board. The procedure employed on these types of cases provides for no notice to any taxing body or to the public at large. No one is made aware that these applications are on file until after they've been granted and the equipment certified, at which point in time the Department of Revenue directs the local assessing official to remove the improvements from the local property tax rules. There are two exceptions, two specific exceptions. If the agency recommends denial of certification, the applicant can file a petition to contest. When a petition to contest is filed by the applicant, the board appoints a hearing officer in accordance with Part 201 of its rules. For the purpose of conducting a public hearing, this public hearing is to take place in the county where the equipment is located, unless the hearing officer directs otherwise. No matter where the hearing officer sets the hearing, public notice of the hearing pursuant to Part 101 of the board's rules must be published in a local newspaper in the county where the equipment is located. Even if the agency recommends certification, but the board deems that a hearing might be advisable, a hearing is then held. And once again, a hearing officer is appointed pursuant to Part 101 of the board's rules. The hearing takes place in the county where the equipment is located, unless he decides otherwise. But once again, notice of the public hearing is published in the county where the equipment is located. Below, the agency and WRB argue that hearings on pollution control certification are conducted under Part 125 and not Part 101. Nothing could be further from the truth. The Pollution Control Board is authorized to hear certain types of adjudicatory cases, including pollution control facility tax certifications. 35 Illinois Administrative Code Part 101 provides the rules applicable to all proceedings before the Pollution Control Board, and they are to be read in conjunction with the procedures for specific processes in Parts 102 through 130. In the event of any conflict between the rules provided in Part 101 and those in 102 through 130, the more specific requirement applies. Part 125 regarding pollution control certifications contains no procedural rules whatsoever. Rather, it refers the reader back to 101. This is particularly true when it says that the clerk has got to publish notice of the hearing in accordance with Rule 101. And that's for good reason. Part 101, specifically 101.110, pursuant to that section, the Pollution Control Board encourages public participation in all of its proceedings. Again, in 101.402, the Pollution Control Board permits any person to intervene in any adjudicatory proceeding, and an intervener, just like in the circuit court, has all the rights of an original party. Counsel, as a preliminary matter, we'd like you to address this court's jurisdiction, whether this is a matter which we may entertain at this point. Okay. With regard to the issue of jurisdiction, in the Pollution Control Board's rules, the Board has declared that judicial review of the final orders is available directly to the appellate court. In the orders, all 28 orders issued here, the last paragraph in each of the 28 orders. I'm not interested in what the Board's rules say. I'm more interested in what the statutes say. The Illinois statutes govern when and how this court may exercise jurisdiction on appeals from administrative agencies. What statute gives us authority to do so in this proceeding? The Environmental Protection Act, specifically Section 41. That deals generally with reviewing actions taken by the Board? Yes. Any party to a 415 ILCS 5-41 provides for judicial review. Any party to a Pollution Control Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance, any party adversely affected by a final order or determination of the Board, and any person who participated in public comment may obtain judicial review by filing a petition for review within 35 days. It goes on and says, Under the provisions of the administrative review law as amended and the rules adopted pursuant thereto, except that review shall be afforded directly in the appellate court for the district in which the cause of action arose and not in the circuit court. What about the matter that we're dealing here with pollution control certificates, as opposed to the normal action of the Pollution Control Board dealing with the typical issue which is submitted to them, and that we have a different statute involved there? The statute with regard to... Section 11-60. 11-60 basically says that an applicant or a holder can file a petition for review under the administrative review law. But I believe that the administrative review law says that if the enabling statute provides something other than the circuit court, then it's the enabling statute that controls. And the Environmental Protection Act specifically says all orders of the Pollution Control Board are subject to appeal directed to the appellate court. And what we have here today specifically is while we're trying to argue about the issue of the tax certifications, what we're dealing with specifically is the Pollution Control Board's denial of a party to intervene in a proceeding before the Pollution Control Board. And that's specifically under Part 101 and Part 125 of the Environmental Protection Act, or of the Pollution Control Board's rules which are adopted under the Environmental Protection Act. It's not clear to me what you're referring to when you speak about 11-60 of the code. It talks about how an applicant or a holder agreed by the issuance, refusal to issue, et cetera, of a Pollution Control Certificate, that would be you, may appeal to filing an order with the Pollution Control Board under the administrative review law. What portion of that, in your judgment, then, gives you authority to come directly to this court? It's not the specific portion of that. It's the specific portion of Section 41. Well, I'm talking about it says under the administrative review law, normally the administrative review law provides the appeal to the circuit court. Does it not? Correct. Normally the administrative review law does provide it to the circuit court. But when the statute, the enabling statute that creates the agency, says you go directly to the appellate court, I believe you go directly to the appellate court. Then what's left of 11-60's language talking about how you may appeal to filing an order under the administrative review law? Is that a mistake? No, but 11-60 doesn't discuss the issue of jurisdiction. 11-60 does not. Well, 11-60 says where the appeal's to go. It says you may appeal under the administrative review law. Now, under the plain language of that, if the administrative review law says this appeals to go to the circuit court, not to the appellate court, why doesn't that begin and end the issue of the question of jurisdiction? Namely, we don't have any. You have to go to the circuit court first. Because I believe that when the enabling statute for the agency says you go directly to the appellate court and not to the circuit court, then that is what controls. What's your authority for that proposition? It's where you see it in all sorts of cases. In all sorts of cases you see in property tax appeal board cases. The appeal is directly to the circuit court, except in those instances where the amount of dispute is over $100,000. Then it goes directly to the appellate court. If we accept your interpretation, why wouldn't we be rendering language from Section 11-60 to be, in effect, nougatory, nonexistent, adds nothing, as if it weren't there at all? It doesn't have to be there. There's no reason for it to be there. Well, I know it doesn't have to be there. But, see, the problem is it is there. So we're under an obligation not to disregard statutory language, but to give it meaning. And what I'm trying to do is figure out how do we give it meaning consistent with the theory that you're espousing. Your theory seems to be we disregard it because the administrative review law speaks of taking an appeal to the circuit court. You say, well, you know, normally that's okay, but there is this other statute in the Act, which Section 41-A, which otherwise governs, and that gives us authority, this court authority, to proceed otherwise. But I'm trying to reconcile your theory with the language I quoted from 11-60, because it seems to me your theory would require us to disregard that language, which is something we ought not do. I don't think that I'm suggesting that you should ignore 11-60. I don't think that Section 11-60 says which court has jurisdiction. 11-60 simply says nothing more than the fact that an agreed applicant or a holder has the right to appeal under the administrative review law. Does the administrative review law within its body permit an appeal to the appellate court? No. Enabling legislation for the... You see my problem. They specified, they could have said, for instance, in 11-60, that an agreed applicant or holder may appeal the finding of the, in order of the pollution control board period. But they added the phrase, under the administrative review law. Now, we're supposed to, as you know, Supreme Court has told this court, to exercise vigorous scrutiny over our own jurisdiction, even if the parties don't raise it. In this case, it hasn't raised. And we have to first determine do we have any jurisdiction at all to hear this matter. As I, you know, and sometimes these statutory schemes aren't exactly as pure and direct as one would like, but we still are under an obligation to figure it out and try to give meaning to all the statutes. And it seems to me that if the administrative review law provides for no exceptions on an appeal to be taken to the appellate court, that all appeals under the administrative review law are to be taken to the circuit court, and the statute says the appeal may be taken under administrative review law, we're out of luck. Now, why can we simply disregard that? I'm not suggesting that you disregard that. What I'm suggesting is that 11-60 does not specify the jurisdiction under the administrative review law. But it doesn't have to because the law provides only for a circuit court jurisdiction. Well, except for the fact that the Environmental Protection Act says that all orders, all orders of the pollution control bar are subject to review under the administrative review law, except that you're to go directly to the appellate court rather than to the circuit court. That's what the Environmental Protection Act says. I don't want to take up any more of your time, counsel. It doesn't distinguish between property tax certifications and other orders. It specifically talks about all orders go directly to the appellate court. And so that's our position with regard to it. But it's interesting that you say that because of the fact that the Attorney General's Office argues and WRB argues that we should not have the right to participate at the pollution control board because of the fact that under 11-60 we don't have the right to appeal. They're saying that under Section 11-60 it only applies to an applicant or a holder of a permit. And they're saying that under Section 11-60, since we're neither an applicant nor a holder of a permit, we have no right to appeal. And that's why that was the basis, the sole basis for their denying our intervention in this matter. Now they come and say you shouldn't appeal to the appellate court, our denial, because of our interpretation of our rules, because of our interpretation of our act, you should not be allowed to appeal here. You should go under 11-60. When we said you had no right to appeal under 11-60 to begin with. So they can't have it both ways. If this case were to go back to the circuit court, if you were to send this case back to the circuit court, their argument there would be just as it was below. They have no right to appeal under Section 11-60. And so they'd argue that the case should be dismissed there. What they're trying to do effectively is to bar us from having any review anywhere, because of the actions of the agency and the Pollution Control Board and the applicant. We had a situation here where the Pollution Control Board says, you know, it's really interesting, because the Pollution Control Board said we don't have the right under landfill lane, which has absolutely no application to tax certification cases. We don't have the right to allow you to intervene. You presented a compelling case to the school district. We've never seen an applicant file in the course of six months 35 applications for 35 separate projects. You, among all school districts, are singularly at risk for the loss of billions of dollars of tax base. We'd let you in if we could. If we were a court of equity, we'd let you in. What was their thinking as to why you couldn't intervene? Their thinking as to why we couldn't intervene? Yes. Because Section 11-60 does not give us appeal rights. That was their thinking. They're saying Section 11-60, which they now want to invoke to send us back to the circuit court, they're saying Section 11-60 does not give us appeal rights, and that if they allowed us to intervene as a party, they would be giving us appeal rights. That's their position. And that's why their jurisdictional argument makes no sense. So their position, normally under the Civil Practice Act, the decision to intervene is broadly interpreted if someone has any legitimate interest in the proceedings. It certainly seems like you folks have a legitimate interest. And your position is the board seemed to acknowledge that you had this legitimate interest, but if you were to lose at the board level since you couldn't appeal under 11-60, they weren't going to let you intervene? That was their analysis? That's what they said. That's what they said. They used the Supreme Court's decision in Landfill Link where the Supreme Court struck down a Pollution Control Board rule where they were basically taking over the jurisdiction of the Environmental Protection Agency. And Landfill Link has been really limited in recent cases, both in this court and in the Supreme Court. But they basically said, we'd let you in. We'd love to let you in. If we were a court of equity, we'd let you in. If we were the legislature, we'd let you in. But we can't give you appeal rights. And since we can't give you appeal rights, we're not going to let you in. What they could have done, what they could have always done, is to say, we can't let you in. But you know what? You've raised an interesting question. We think that a hearing might be advisable. Let's have a public hearing. Publish notice in the county school district. Come and participate because the public is invited to participate. And then petition to intervene in the hearing that we call. And we would have been allowed in. They could have done that. But they chose not to. And they chose not to in large part because they don't follow your rules on the primary purpose doctrine. For pollution control facilities. This is nothing more than a rubber stamp. I'm not sure I understood the last part. They don't follow what? In order for any equipment, any building, anything to be certified as a pollution control facility, its primary purpose has to be pollution control. Which basically means under the precedent, and it's cited in our brief, under the precedent, that's four or five cases rendered by this court in this room. If it has any manufacturing function whatsoever, its primary purpose is not pollution control. It has to have virtually no manufacturing function whatsoever. And that's why I rattled off the five big projects. Because they produce gasoline and diesel fuel for sale to the public. Their interpretation is, you know, we need low sulfur gasoline. So if you install a product that produces low sulfur gasoline, it's a pollution control facility. That's entirely inconsistent with this court's prior rulings. What should it be? I want to make sure I understand. Our prior decisions would require it to be only for pollution control? I'm not sure I understand. Your prior rulings say that there should be no substantial manufacturing function. It should be solely for pollution control. Even if it reduces pollution by addressing sulfur or gasoline, making it low sulfur or whatever? The whole purpose behind the property tax break is to reduce pollution in the community where the property taxes are paid. Counselor, you'll have your vote. Thank you. Thank you. Counselor, have you divided your time with Mr. Wilson? Yes, we have, Your Honor. I'll be taking 15 minutes. Mr. Wilson will be taking five. Excellent. Briefly, Richard Hozek, Assistant Attorney General Counsel for Pollution Control Board, and I'm going to urge the court to find that it does not have jurisdiction over this matter based upon a close reading of Section 1160 of the Property Tax Code and Section 41 of the Environmental Protection Act. You heard Mr. Witt's argument. Is he right with regard to your position? He is not. And I think it's important to just start out quickly with a basic background, which is that some 98% of what the Pollution Control Board does involves matters under the Environmental Protection Act. That's the basic bread and butter of what they do on a daily basis. It's variances, it's permits, it's complaints of violations of regulations, permits, that type of thing. The legislature has also given them this small additional authority as part of the process of this property tax thing, which is that there's a break, not an exemption from taxes, but a lower valuation formula for property that qualifies as pollution control facilities. The statute says, Pollution Control Board, you make that initial determination whether it qualifies as a pollution control facility. And as an aside, we disagree with their characterization of the law on the primary purpose test, but that's not really the focus of this appeal. If it does so, the matter goes to the Department of Revenue to apply the relevant formula and determine what the assessed valuation should be and then plug that into the tax process. So against that basic background, it's our position that the property tax code provisions, Article 11, and the Environmental Protection Act provisions operate in separate spheres. They each have a separate function. They each apply and impose procedures for each of those separate types of proceedings or categories of proceedings. And those include participation and administrative review. And it's our position that it's not only intuitively sensible to have Section 11-60 along with 11-30 and the other provisions of the property tax code apply to property tax certification proceedings and then have Section 41 and the rest of the Environmental Protection Act apply to Environmental Protection Act matters, but it's supported by the text of those provisions as well as the relevant canons of statutory interpretation. So I do want to... So you're arguing that we don't have jurisdiction because of 11-60? Yes. If we agree and we dismiss this case on the grounds that we have no jurisdiction, would the petitioners here be able to take the matter for administrative review to the Circuit Court? No, and I wanted to clarify that because I was afraid there might be a misunderstanding. No, it's our position that 11-60 is exclusive, that the courts have no administrative jurisdiction if there's a statute that governs administrative review and it doesn't provide for review for that person or that matter. Is there any forum at any point at which the concerns they've raised will be heard? They can go to the legislature and seek to have the statute changed. I mean, you know, that's like you can contact the Pope to get prayers, too. Well, it may sound... Perhaps more effectively. I'm not a politician, so I'm not sure what it takes to get legislation passed. Well, but in fact, on this particular issue, they're just out of luck. But here's the rough analogy. I mean, not every proceeding is an adversarial proceeding that's adjudicative. Name changes aren't adversarial. And if you had, for example, a... It sounds like there's an adversary proceeding here, counsel. Well, but... You know, and had this been a normal trial-level matter, I don't think there's any question if I'm the judge, I'd let them in. I'd say, it sounds to me you've got some real interest. Let's hear it. And it's clear that if there were an authority for a Circuit Court review, they could petition for leave to intervene in that proceeding if somebody had already brought it. Why didn't the Board let them in at the Board level for a hearing? Well, largely for similar reasons, which is it understands these two sets of rules as applying to respective categories of matters, property tax certifications and Environmental Protection Act matters, and it looked at the authority it had to conduct hearings in pollution control facility certification cases, and it specifies that a hearing shall be given to applicants or holders in the event that the Board potentially will deny or revoke the proceeding. And the rule in landfill, the general principle that's been reaffirmed by case after case after case, is that agencies are creatures of statute. They don't have, you know, general common law powers. They don't have inherent authority. They don't have implied authority generally beyond the... My position is we have no authority to let these folks in on an intervention to be heard and raise whatever issues they want. And I want to dispel the notion... Before you dispel anything, how about giving me an answer to my question? Oh, absolutely. Sorry for interrupting, Your Honor. The answer is yes. And I want to dispel the notion that the Board is somehow picking on these plaintiffs. The Board has taken the same position repeatedly in prior cases. It's looked at its authority. Part 125 regulations are authorized by the Environmental Protection Act. So to the extent that they would apply an authorized intervention generally, those are for EPA cases. But the Board has said even if they could apply, the statute says that the only people that we can allow participate and have a hearing in these cases and be parties are applicants and holders. We can't go beyond that and create some implied authority that we don't have to let other people in. And there's a policy reason there, which is that because these tax certifications become effective under Illinois Supreme Court precedent only when they're finally over, if you let every property tax district intervene in one of these proceedings, it delays the date at which the effectiveness of those tax consequences apply. And what you see is an illustration of that they win even if they ultimately lose because if you can delay the date of a certification past the beginning of the calendar year, you've won. You get money that the statute says normally shouldn't have been received. So there's competing considerations. I understand their argument that they should have been allowed to intervene, but there's no constitutional right here. There's no due process. It's strictly a matter of statutory interpretation. What kept the Board from letting them intervene at the trial level? 1160 speaks of an appeal. Well, 1125 and 1130 govern the procedures of these cases generally, and they specify that the people who are entitled to a hearing are an applicant or a holder in an application or revocation proceeding. That's an enumeration of who is a party in these proceedings, and the landfill principle generally, which can't be disputed, is that when the statute sets forth an enumeration of what an agency can do, including parties who can participate, that's the limit on the agency's power. It doesn't have the ability to go beyond that and say, well, it doesn't prohibit us from letting other people in, so wouldn't it be safe to have that authority? So the Board concluded, and we'd have to agree, that the legislature intended for this matter to be solely between the Board and any applicant, and that's it? That is our interpretation of the statute, Your Honor. It's a question of statutory interpretation. The Court gives a de novo review, and it's for you to decide if this is a case in which the Court resolves that issue, it will be beneficial for the administration of these matters. But I want to offer that this isn't unprecedented. A good example is a policeman's pension disability application. Those aren't adversarial proceedings. The policeman comes in, represented by counsel. But there are very few such proceedings that affect anyone else besides the Board and the cops. The taxpayers are on the hook because they contribute to the fund that pays those benefits. And so if there's an award, there's no appeal because there was nobody opposing it at the hearing. There's nobody who has standing to oppose it. Well, even in Illinois, we aren't yet at the stage of billion-dollar pensions. Well, that'll be another case. We've got billion-dollar tax districts involved here, don't we? We do, but again, there's plenty of authority that in property tax cases like this, there is no right of somebody who has an indirect interest in the taxes to participate. So that's been established. The legislature was acting on solid ground when it said essentially, and that is our interpretation of the statute, that these are non-adversarial proceedings. They're essentially streamlined. The IEPA makes a recommendation as to whether the part of the property qualifies as a pollution control facility or not. The Board considers it. It makes its decision. It's not a proceeding that's generally open to anybody who may be indirectly interested by the downstream flow of taxes. You heard Mr. Witt's beginning argument about the money involved in this case. Do you dispute any of that to the petitioners? No, but there is an additional background, which is there was a stipulation as to the value of the refinery that expired. That was an $8 million valuation. Now they're arguing whether that valuation is going to go all the way up to $26 million or some lesser number than that. But they're getting lots of additional money regardless how all these applications pan out. And to the extent that they want more rather than less more, that's something that if they want the system changed so that they have the right to intervene and seek administrative review in these cases, I think they really need to address that to the legislature because the Pollution Control Board consistently has administered these statutes in this fashion to say these are non-adversarial proceedings where strangers aren't allowed to come in, delay the proceeding, delay the effective date of these certifications, and somehow participate in something that the legislature has otherwise specified. These are the people that have the right to a hearing and notice. Now it's not true that there's no notice to anybody before the decision is finally made. Those are up on the board's agenda, but they don't notify the world generally that these are going to be decided. At the end of Mr. Witt's argument, he mentioned something about a procedure which the board could have engaged in, about sending out notice and how they could have had some hearings and then people could have been there. Those are not mandatory, and I don't believe that they apply to these matters. Under the board's understanding of its limited authority with respect to application proceedings, the board doesn't have the right to make people parties. It can sometimes seek public input, but that's different from the ability to walk into a courtroom and start cross-examining witnesses and offering evidence. There are a lot of situations in which, and I think the environmental area has some of them, in which there's a public comment process, but that's not the same as what they want. They made it very clear that they expect the same status as every party to the case, which means let's do discovery, let's call your first witness, let's make this a Smith versus Jones specific performance over Blackacre type trial, and the legislature didn't intend for it to be that type of proceeding in this highly technical area within the board's expertise. I think that ultimately this is our position, is that you have two sets of procedures for two sets of cases, Environmental Protection Act cases and cases under the Property Tax Code, that each is essentially self-contained, relates to its own sphere of activity, and the authority of the board is limited to what the statute has given it in the Property Tax Code, and that authority with respect to participation is clear that it's limited to applicants and holders, as the statute specifies. And then when it gets to administrative review, if 1160 is exclusive, then there is no right of administrative review by somebody other than those people specified in 1160. And I think, Justice Steigman, you put your finger on it when you said, what is left of 1160 if you adopt their argument, the court adopts their argument, that Section 41 in the Environmental Protection Act somehow creates this right of separate administrative review for all cases, including those under the Property Tax Code? The answer is 1160 is written right out of the statute. It has no meaningful effect. In addition, it violates the canon of statutory interpretation that the specific controls over the general, and finally, it creates this absurd consequence that the same parties would have the ability to seek review either in the appellate court or in the circuit court, depending upon their preferences, and heaven forbid that there be two parties that want to seek administrative review, and they go to different courts, and you've got to sort out whether you have jurisdiction or the Circuit Court of Cook County has jurisdiction. I mean, that makes no sense whatsoever. And I think if you look at the structure... That's a real specter. I don't want to get in the middle of that. But you know, it might make for some interesting venue practice in front of both courts simultaneously. All we need is a third ring for the circus. I think when you look at the two statutes, their structure as a whole, the text and the relevant canons of statutory interpretation, the court will conclude that the board correctly interpreted its statute here as not giving appellate jurisdiction under Section 41A for property tax certification cases. And accordingly, the court lacks jurisdiction. And part and parcel of the same reasoning is that these proceedings are limited to a designated list of parties, not additional persons who want to intervene. And accordingly, the intervention issue of the court would get to it, follows largely from the same reasoning, and would result in the same outcome. So if I have any time, I could relinquish it to Mr. Wilson. I urge affirmance. Thank you, Your Honors. Thank you. Mr. Wilson. Good morning. May it please the Court. There are two points I'd like to make this morning. One on the facts, one with regard to the statutory scheme. With regard to the facts, there's been a lot of argument by... You need to speak up a little bit, Mr. Wilson, please. It's not a microphone, it's just a recording device. Okay. I'm told that a lot. With regard to the argument that there were all of these applications filed at one time in 2010. Well, yes, there were, because from 2004 through 2010, there was an agreement, which is in the record, between the refinery and the taxing bodies as to what the assessed value was, plus supplemental payments made to the taxing bodies. When that agreement could not be renewed or extended, both parties were left... What the property tax code allows them to do is to challenge the assessment and for the refinery to file for pollution control facility certifications for things that have been built over the past years. So all we're doing is what the property tax code allows us to do. With regard to the point I wanted to make on the statutory scheme, the board viewed the proceedings that it has under the property tax code for these certifications as, in its words, a circumscribed proceeding in which it's applying technical expertise as to whether this thing is for the purpose of reducing pollution or not. If so, it goes to the Department of Revenue, and they make the assessment decision under a formula that's set forth. And if you look at what the board was saying, they said, we can only allow people in as parties if the legislature has said these people are allowed to be parties to these proceedings. And under the Madison 2 case, which the plaintiffs in this case cited, it's very clear that under the property tax code, when the legislature wanted taxing bodies to be parties to various proceedings, they said so expressly. When you get into the situation of reviewing the property tax assessment, the taxing authorities are expressly allowed to go to the board of review. They're expressly allowed to go to the property tax appeal board. They're expressly allowed to petition or file a complaint in circuit court. They're expressly allowed to intervene in front of the property tax appeal board. And in the case of pollution control certifications, the legislature has, using the same language from the assessment process, said that the taxing bodies can go in front of the Department of Revenue, which is happening right now, to argue about the valuation of this equipment. What the legislature did not do, and it used different language in limiting who the parties are at the technical certification process, is said that the applicant files an application to certify this as a pollution control facility. The agency then makes a recommendation, and the board, using its expertise, decides is it or is it not for pollution control, leaving the Department of Revenue to certify the value, where they get the full right to participate. So what the board was saying was simply, we can only do what the General Assembly has told us we can do as far as who gets to be a party to these proceedings. They are not a court of general jurisdiction, such as a circuit court, that has the right, under the Civil Practice Act, to decide who gets to intervene. You heard Mr. Wood argue that the board was using the wrong standard, assuming he's right for the moment. When would they ever have an opportunity to raise that issue and to point it out to the board and say, using the wrong criteria here? They have the right in several ways, Your Honor. They do not have the right to become a party and turn this into what is essentially a federal lawsuit with discovery experts cross-examination. But under the board's own rules, they have the right to submit public comments. They have the right to file for leave to submit an amicus curiae brief. They have multiple ways they can bring their concerns to the attention of the board. What they do not have the right to do, and what the General Assembly has not granted them the right to do, is to become a party to the process of the certification itself. That's for the board, technical staff and their expertise. And as the board said, they've dealt with these issues for years and there has never been a case in Illinois where a taxing body, which doesn't even get notice of the filing of the application for good reason, because they're not to be parties, there's never been a case in Illinois where a taxing body has been allowed to participate as a party in the certification process. And this statute has been around, as I recall, since the original Revenue Act in 1939. So the rules of the board would permit the petitioners to be heard in quotes, not as parties, but to have some input to the extent the board thinks it would be desirable or helpful, I guess drawing perhaps an imperfect analogy to like an amicus curiae brief submitted to the Courts Review? Yes, in fact, that's one of the several ways that it's expressly set forth in the board's regulations that allows a non-party to make its views known to the board. They just wanted to be parties so they could drag this out for multiple years with discovery and with experts and with adversarial proceedings. Well, I don't know that we know what the purpose is. They want to be parties because if you're a party, you have standing to do stuff. Yes, all of those rights. My time is up. Thank you, Your Honor. Thank you. Rebuttal, please. We want to be a party because they're applying the wrong standard. You have announced the primary purpose test. They've thumbed their nose at it, just straight up, and that's why we want to be a party. And if it's such a circumscribed process that nobody gets to participate in, then why, if the agency denies or recommends denial, why is there a public hearing? Why is there published notice in the county where it's to be had? Why, if the board is concerned about whether or not these things qualify, if they have any concern whatsoever about this, and our position is that they do not, if they have any concern whatsoever, and they say, okay, let's hold a hearing about this, why do their own rules require that they publish notice in the county where the equipment is located if it's such a circumscribed proceeding? The property tax code does not establish procedure in any of these arenas. The property tax code does not have any bearing upon whether or not we've got the right to intervene under the Environmental Protection Act or the rules promulgated by the Pollution Control Board. The property tax code does not authorize, the property tax code makes no mention, the property tax code makes no mention of taxing body intervention in matters before local boards of review. Rules of the local boards of review make that mention. The property tax code makes no mention of taxing bodies being allowed to intervene before the Property Tax Appeal Board. It's the rules of the Property Tax Appeal Board that talk about intervention. Here, it's the rules of the Pollution Control Board that talk about intervention and says that when you stand to lose a billion dollars of assessment, you are materially affected. The property tax code makes no reference to taxing bodies being allowed to intervene in tax rate objection cases. That's a creature of the judiciary and the Code of Civil Procedure. And in Madison 2, when the court said, even if a taxpayer takes an assessment appeal directly to the circuit court, rather than the PTAB, what the Supreme Court said in allowing intervention on the part of the taxing bodies, they said it's not the property tax code that sets up the procedure for these types of hearings. It is the procedure, the rules that are applied in the circuit court, at the Property Tax Appeal Board, at the Board of Review, and at the Pollution Control Board. It's their rules that allow it. And their rules say, if we're going to have a hearing, we're going to publish notice so that people can arrive. There's nothing in their rules that say that we're only allowed to public comment. There's nothing in their rules that says that this is a circumscribed proceeding. In their rules it says, if in fact there's a hearing, they've got the burden of proof. This is not an issue of the taxing bodies trying to grab all kinds of money. This is an issue of fundamental fairness, because if they've got a billion dollars off the property tax rolls, everybody else in the county, everybody else in the school district, is paying more than their fair share. And that's what this is about. We don't want this thing drug out. We want this thing over with. We want them to be directed to follow the rules as announced by this court. For that reason, we ask that the orders be vacated and the matter remanded with direction to allow us to intervene. So essentially we'd be directing the board to go back and start all over with you as a party? That's what we're looking for. Now, the Attorney General has suggested that that's not your role. You should have us go back and have the board determine whether we should be a party. The board's already made the findings. The board's already said, if we were a court of equity, we'd let you in. If we were a legislature, we'd let you in. We understand that you folks are suffering down there as a result of this decision. We just don't. We can't do it. We can't let you in. We're clear that they can't. One other point. The board in 1986 or 1988 allowed the Recuster School District to challenge after-the-fact certifications when the statute doesn't specifically provide for it. And the board there, on a motion to dismiss by Commonwealth Edison Company over the Braidwood Nuclear Power Station and its cooling lights, the board there said, no, you have no merit. They do have the ability to try to get the certification revoked. So there's all sorts of opportunities for us to get into these things as a party. They're just trying to knock us out and keep us out because they've got a system set up here where the agency makes a recommendation within a week, two weeks, approved by the PCP. And then once you call them on it, even when you tell them they've made a mistake in their order, a critical mistake in their order, they say, that's okay, it's fine, let's go away. We don't want to hear from them. Thanks to all of you. The case is submitted and the court stands in recess.